UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

BARBARA ANN BEASON,     )
    )
    *Plaintiff*,     )
    )
v.     )           No. 1:13-cv-192-CLC-SKL
    )
COMMISSIONER OF SOCIAL SECURITY,     )
    )
    *Defendant*.     )

## REPORT AND RECOMMENDATION

Plaintiff Barbara Ann Beason ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her supplemental security income ("SSI"). Plaintiff moved for judgment on the pleadings [Doc. 10], and to correct a deficiency with the original filing, Plaintiff filed a second motion for judgment on the pleadings [Doc. 13] with a memorandum in support [Doc. 14]. Defendant has moved for summary judgment [Doc. 15] and has filed a memorandum in support [Doc. 16]. Plaintiff has filed a reply brief [Doc. 17] to Defendant's motion for summary judgment. This matter is now ripe.

Plaintiff alleges that the administrative law judge ("ALJ") erred by: (1) failing to obtain the testimony of a vocational expert ("VE"); (2) allowing a different ALJ to sign the decision without sufficient authorization; (3) failing to properly evaluate Plaintiff's Global Assessment of Functioning ("GAF") scores; (4) failing to include a function-by-function assessment; and (5) improperly evaluating Plaintiff's credibility. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**; (2) the

Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed her application for SSI on April 15, 2010, alleging disability as of June 30, 2009 (Transcript [Doc. 8] ("Tr.") 58, 95).   Plaintiff's claim was denied initially and upon reconsideration, and she requested a hearing before the ALJ (Tr. 13, 63, 76).   The ALJ held a hearing on September 21, 2011, during which Plaintiff was represented by an attorney (Tr. 45). The ALJ issued a decision on November 10, 2011 and determined Plaintiff was not disabled because Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy (Tr. 13-22).   The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3).   Plaintiff filed the instant action on June 10, 2013 [Doc. 1].

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was 40 years old on the date she filed her application (Tr. 21).   She has a limited education, but the exact level of Plaintiff's education is difficult to determine as the record contains conflicting information (Tr. 49, 114, 286).   Plaintiff did not graduate from high school or obtain a GED (Tr. 49).   Plaintiff is able to read and write in English and do basic math (Tr. 49).   At the hearing, Plaintiff stated she has past relevant work as a home healthcare private sitter (Tr. 50-51).   Plaintiff also appears to have other work history, albeit an extensively fragmented one, including work at a fast food restaurant, a grocery store, and a convenience store (Tr. 104-07).   Plaintiff has not worked since 2009 (Tr. 50).   Plaintiff stated that she stopped working because she is agoraphobic and cannot see well (Tr. 51).

### B.     Medical Records

Only the portion of Plaintiff's medical records relevant to the parties' arguments will be addressed herein, but all relevant medical records have been reviewed.

### 1.     Physical Health

In terms of Plaintiff's physical health, her severe impairments included "a history of bronchial asthma, chronic obstructive pulmonary disease, fibromyalgia, lumbago [lower back pain], decreased visual acuity, [and] obesity" (Tr. 15). Plaintiff saw a number of specialists for several of these diagnoses. For example, Plaintiff attended several sessions at Benchmark Physical Therapy in April and May of 2010 (Tr. 184-253). At Plaintiff's initial appointment, therapist Princess Williams opined that Plaintiff's "overall rehabilitation potential [was] good" (Tr. 250). At her next visit two days later, Plaintiff "had decreased hip pain post manual therapy," specifically aquatic therapy, although she did have some increased pain due to ligament testing (Tr. 243). Plaintiff continued to improve at each visit, and on April 23, 2010, she "no longer ha[d] constant hip pain," "cramping in her left calf [was] lessening," and she "report[ed] that she [was] better able to straighten the left knee" (Tr. 229, 223). Plaintiff fell in early May, which caused some setbacks (Tr. 202). By May 21, 2010, however, Plaintiff "had great improvement in her hip pain," her "gait pattern [had] improved greatly," she "[had] demonstrate[d] excellent increase in left lower extremity strength," and her hips "[had] much improved in flexibility, strength, and pain level" (Tr. 192). Plaintiff did continue to experience back pain (Tr. 192). Her last physical therapy visit at Benchmark was on August 5, 2010, and the report showed the same improvements with continued back pain (Tr. 308).

Plaintiff had a consultative examination with Dr. Thomas Mullady on August 24, 2010 (Tr. 285-91). Based on his examination of Plaintiff, Dr. Mullady opined that she "retain[ed] the

capacity to occasionally lift and/or carry for up to one-third of an eight-hour workday a maximum of twenty pounds" and "frequently lift and/or carry from one-third to two-thirds of an eight-hour workday a maximum of ten pounds" (Tr. 287). He also found that Plaintiff "would be able to stand and/or walk with normal breaks for at least two hours in an eight-hour workday, and would be able to sit with normal breaks for at least six hours in an eight-hour workday" (Tr. 287). Dr. Frank R. Pennington completed a physical RFC assessment on behalf of the state, in which his opinion was largely consistent with that of Dr. Mullady (Tr. 293). Dr. Pennington further opined that Plaintiff could push and pull without limitation; could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; had no limitations on her ability to reach in all directions, handle, finger, and feel; had no visual limitations except for far acuity; had no communicative limitations; and had no environmental limitations except for a requirement to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 294-96).

### 2. Mental Health

During Plaintiff's appointments with the Johnson Mental Health Center on February 4, 2010 and February 17, 2010, she received a GAF score of 49 (Tr. 180, 183). According to the record, these are the only two appointments Plaintiff attended at mental health centers in the Volunteer Behavioral Health Care System. Plaintiff was discharged on May 7, 2010, for missing appointments (Tr. 306).

Plaintiff also saw Wendy Bovell, a licensed clinical social worker, for mental health treatment over approximately three months (Tr. 254-66). Plaintiff had "never seen a counselor before" her diagnostic evaluation with Ms. Bovell on March 23, 2010 (Tr. 261). In the same evaluation, Ms. Bovell gave Plaintiff a GAF score of 61; in addition, Plaintiff had normal

4

appearance, speech, orientation, attention, concentration, memory, and thought processes (Tr. 264, 266). Ms. Bovell deemed Plaintiff's judgment and insight poor, and she indicated a depressed mood as well (Tr. 266). Ms. Bovell's two main goals for Plaintiff's treatment were to recognize and manage stressful situations more effectively and to cope with her anxiety (Tr. 264). Ms. Bovell saw Plaintiff for five more individual sessions before filling out a disability determination form as a treating source on June 8, 2010 (Tr. 254-60). On this form, Ms. Bovell indicated that she believed Plaintiff could maintain an ordinary work routine without frequent, stress-related breaks or inordinate supervision (Tr. 254). Ms. Bovell opined that Plaintiff could maintain socially appropriate behavior, hygiene, and grooming, as well as care for herself and maintain independence on a sustained basis (Tr. 254). Ms. Bovell did note, however, that Plaintiff might not be able to respond appropriately to normal stress and routine changes if her personal stress was not well managed (Tr. 254). Ms. Bovell believed that Plaintiff was exaggerating her symptoms (Tr. 255). Ms. Bovell noted that Plaintiff had never been taught about work ethic, and she reported that 95% or more of Plaintiff's family members were receiving disability income, which could be affecting her motivation to find work (Tr. 254).

Dr. Edward Sachs completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment on June 29, 2010 on behalf of the state (Tr. 267-84). In the former, Dr. Sachs diagnosed Plaintiff with a non-specified mood disorder (Tr. 270). From this diagnosis, Dr. Sachs determined that Plaintiff had mild limitation in activities of daily living and moderate limitation in maintaining social function and in maintaining concentration, persistence, and pace (Tr. 277). However, Dr. Sachs noted that there "may be exaggeration of symptoms" and that "medical evidence supports no more than moderate psych limitations which do not preclude basic work related mental functions" (Tr. 279). In Plaintiff's Mental Residual

Functional Capacity Assessment, Dr. Sachs indicated a number of mild and moderate limitations, but he ultimately stated that Plaintiff could perform "one, two, or three step tasks over full work week in coordination with others," "interact infrequently or 1-1 with general public and meet basic social demands in a work setting," and "adapt to gradual or infrequent changes" (Tr. 281-83).

### C.    Hearing Testimony

On September 21, 2011, ALJ Eduardo Soto conducted a hearing in Plaintiff's case (Tr. 45-57).  At the hearing, Plaintiff was the only person who testified.  The ALJ did not obtain the testimony of a VE at the hearing.

Plaintiff testified that the main conditions that kept her from working were poor vision and agoraphobia, the latter of which led to debilitating anxiety attacks (Tr. 51-52).  During these attacks, Plaintiff stated she could not breathe and would break out in a rash all over (Tr. 52).  Plaintiff stated that she was having an anxiety attack during the hearing, which was causing her to break out in a rash on her forehead and arms (Tr. 52).  Plaintiff indicated that her counseling treatment had ended because she lost her insurance, but she was still taking medication for her mental health symptoms (Tr. 51).

Physically, Plaintiff testified to having mobility problems due to pain in her back and left hip (Tr. 52).  Because of this, Plaintiff stated she could neither sit nor stand for more than 15-20 minutes total during an eight-hour work day (Tr. 53).  She also had problems walking and bending at the waist (Tr. 53).

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, No. 12-4316, 2013 WL 5749156, at *9 (6th Cir. Oct. 24, 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

**B.      The ALJ's Findings**

At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since April 15, 2010, her application date and the amended alleged onset date (Tr. 15, 172). At step two, the ALJ found Plaintiff had the following severe impairments: history of bronchial asthma, chronic obstructive pulmonary disease, fibromyalgia, lumbago, decreased visual acuity, obesity, mood disorder, and obsessive-compulsive disorder (Tr. 15). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 18). Specifically, the ALJ considered Listings 12.04 and 12.06 (Tr. 15-16). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work, and while the ALJ's phrasing in the heading portion of his RFC assessment is not as clear as it could be, the ALJ found that Plaintiff was able to perform one, two, and three step tasks over a full work week in coordination with others; she was able to interact infrequently or one on one with the general public and meet basic social demands in a work setting; and she was able to adapt to gradual or infrequent changes (Tr. 16-21). At step four, the ALJ found that Plaintiff did not have any past relevant work (Tr. 21). At step five, the ALJ noted that Plaintiff was a younger individual, 18-49, on the date the application was filed, had a limited education, and was able to communicate in English (Tr. 21). After considering Plaintiff's age, education, work experience, and RFC, and after utilizing the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P,

8

Appendix 2 ("Grids"), the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 21-22). These findings led to the ALJ's determination that Plaintiff was not under a disability at any time from April 15, 2010, the amended alleged onset date and the date the application was filed, through November 10, 2011, the date of the ALJ's decision (Tr. 22).

## IV. ANALYSIS

Plaintiff alleges that the ALJ erred by: (1) failing to obtain the testimony of a VE; (2) allowing a different ALJ to sign the unfavorable decision without sufficient authorization; (3) failing to properly evaluate Plaintiff's GAF scores; (4) failing to include a function-by-function assessment; and (5) improperly evaluating Plaintiff's credibility. Plaintiff argues that the ALJ's errors require remand. Each of Plaintiff's arguments will be addressed below.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not

re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

As relevant in this review, an ALJ must consider "the claimant's allegations of his symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at

odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "[a]n [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

### B.     Lack of VE Testimony at the Hearing

Plaintiff's main argument is that the ALJ erred in failing to obtain the testimony of a VE at the hearing because of Plaintiff's significant non-exertional limitations. Plaintiff specifically contends that her obsessive-compulsive disorder, anxiety disorder, pain, and impaired gait are significant non-exertional impairments and limitations, which required the ALJ to obtain the testimony of a VE at the hearing rather than relying on the Grids alone. Defendant contends that the ALJ appropriately used the Grids as a framework to determine whether Plaintiff could perform other work, because the ALJ determined that Plaintiff's non-exertional limitations had little to no effect on the occupational base of unskilled light work.

If a claimant can perform the full range of any given exertional level of work (e.g., sedentary, light, or medium work), the Commissioner may meet his burden of establishing no disability by relying on the Grids. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524,

535 (6th Cir. 1981) (to use the Grids, the claimant's abilities must "precisely coincide" with the categories used by the Grids). But reliance on the Grids is improper when the claimant's ability to perform the full range of occupations at a particular exertional level is "significantly limit[ed]" by impairments not accounted for in the Grids. *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987). If the claimant's occupational base is "eroded" in this manner, the Grids may be used only as a "framework" for a decision, and the ALJ must find other evidence (for example, a VE's testimony) that a person with the claimant's limitations can perform other specific jobs existing in significant numbers. SSR 96-9p, 1996 WL 374185 (July 2, 1996); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008). Thus, because the ALJ relied on the Grids to find Plaintiff was not disabled, the issue before the Court is whether the ALJ erred in finding that Plaintiff's non-exertional limitations were not severe enough to preclude the use of the Grids.

If there is additional "reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations," the Grids may be applied notwithstanding the existence of non-exertional limitations. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (citations omitted). "'[B]efore reaching the conclusion that the grid will not be applied because [of the alleged] nonexertional limitations, those limitations must be severe enough to restrict a full range of gainful employment at the designated level.'" *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (alteration in original) (quoting *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 985 (6th Cir. 1987)). Thus, the question is "whether there is substantial evidence in the record to support the ALJ's determination that claimant's nonexertional limitations were not 'significant' in that they did not have an effect on the occupational base of unskilled work at all exertional

levels. If the nonexertional limitations were not significant, reliance on the Grids was appropriate." *Collins*, 357 F. App'x at 670.

At step two of his analysis, where the ALJ determined Plaintiff's severe impairments to include "a history of bronchial asthma, chronic obstructive pulmonary disease, fibromyalgia, lumbago, decreased visual acuity, obesity, mood disorder, and obsessive-compulsive disorder," the ALJ stated that these "impairments cause significant limitations in the claimant's ability to perform basic work activities" (Tr. 15). The ALJ did not find Plaintiff's diabetes to be a severe impairment, however, because it is controlled with nutrition and therefore "does not cause significant limitation to the claimant's activities" (Tr. 15). The ALJ determined that Plaintiff's non-exertional limitations "have little or no effect on the occupational base of unskilled light work" because the evidence in the record did not establish any "substantial loss of the ability to perform the basic mental demands of competitive, remunerative, unskilled work," including "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting" (Tr. 21). The ALJ found that Plaintiff's RFC specifically met each of these requirements, as Plaintiff was capable of light, unskilled work, and was able to "perform one, two, and three step tasks over a full workweek in coordination with others," "interact infrequently or one on one with the general public and meet basic social demands in a

work setting," and "adapt to gradual or infrequent changes" (Tr. 16-17).[1]  The ALJ found that the occupational base was therefore not eroded, as there are "approximately 1,600 sedentary and light occupations, each representing numerous jobs in the national economy," which could be identified at the unskilled level (Tr. 22).

The ALJ specifically considered and explained Plaintiff's exertional and non-exertional limitations in making a finding as to Plaintiff's RFC, and the ALJ supported his RFC finding with evidence from the record.  Further, the ALJ properly addressed whether the Grids could be applied in this case, and the ALJ determined that any non-exertional limitations did not significantly limit the range of work permitted by Plaintiff's exertional limitations.  Thus, substantial evidence supports the conclusion of the ALJ that the occupational base was not eroded.  I therefore **FIND** that the ALJ's reliance upon the Grids in step five of the sequential evaluation process was proper, and I further **FIND** that the ALJ need not have obtained the testimony of a VE at step five of the process.

---

[1] Plaintiff, in her reply, focuses on the fact that a claimant must be able "to deal with changes in a routine work setting," according to SSR 85-15, 1985 WL 56857 (Jan. 1, 1985), and argues that the ALJ's finding that Plaintiff could adapt to "infrequent changes" was not sufficient to satisfy the requirements of SSR 85-15.  [Doc. 17 at Page ID # 420].  The ALJ actually found that Plaintiff was capable of adapting to "gradual or infrequent changes," not merely infrequent changes (Tr. 16-21).  Plaintiff provides no authority to support the contention that the ability to adapt to gradual or infrequent changes does not satisfy the requirement that a claimant be found capable of dealing with changes in a routine work setting.  The case cited by Plaintiff in support of her argument, *Jordan v. Comm'r of Soc. Sec.*, 538 F.3d 417, 424-425 (6th Cir. 2008), can be distinguished from the instant case, as *Jordan* was remanded because the claimant had exertional limitations in addition to non-exertional limitations, and thus the ALJ's reliance on SSR 85-15, which considers only non-exertional limitations, was improper.  Here, the issue is only Plaintiff's non-exertional limitations.  Plaintiff has not shown that the ALJ's finding that Plaintiff's non-exertional limitations allowed her to perform a full range of work was unsupported by substantial evidence.

## C.    Signature by ALJ Who Did Not Conduct the Hearing

Plaintiff contends that it was a procedural error for ALJ Edward Snyder to sign the decision when ALJ Eduardo Soto presided over the hearing.  Plaintiff argues that there is no documentation in the record indicating that ALJ Soto approved the decision or gave ALJ Snyder permission to sign the decision on his behalf.  Plaintiff contends that the decision is not properly authenticated because ALJ Snyder's signature violates the Social Security Administration's Hearing, Appeals, and Litigation Law Manual ("HALLEX") I-2-8-40.

Defendant agrees that Hearing Office Chief ALJ Snyder signed the decision, while ALJ Soto conducted the hearing in this case.  Defendant concedes that there is no signatory authorization in the file, and that HALLEX was not explicitly followed, but argues that remand is unwarranted because Plaintiff has not shown any resulting prejudice.

The Commissioner of Social Security "provides 'guiding principles, procedural guidance and information' to adjudicators and staff of the Office of Hearings and Appeals" in the HALLEX manual.  *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008) (quoting HALLEX I-1-0-1, 2005 WL 1863821, at *1 (June 21, 2005)).  HALLEX "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Actions levels."  HALLEX I-1-0-1, 2005 WL 1863821, at *1 (June 21, 2005).

HALLEX provides guidance on the situation at issue here, where an ALJ other than the ALJ who conducted the hearing issues or signs the decision.  *See* HALLEX I-2-8-40, 1993 WL 643064, at *1-2 (May 16, 2008).  The guidelines provide two procedures which allow an ALJ other than the ALJ who conducted the hearing to sign the decision.  First, the Hearing Office Chief ALJ ("HOCALJ") may reassign a case if the ALJ who conducted the hearing is

unavailable to issue a decision for a prolonged period of time, due to "death, retirement, resignation, illness" or "other cause resulting in prolonged leave of twenty or more days." *Id.* at *1. Second, where the ALJ who conducted the hearing has approved a final decision draft but is unavailable to sign the final decision, the ALJ may grant the HOCALJ authority to sign the decision on behalf of the ALJ. *Id.* In the second case, the guidelines require that the final decision signed by the HOCALJ, the draft decision approved by the ALJ, and the ALJ's signatory authorization must be retained in the claims folder. *Id.* at *2.

As Defendant concedes that the requirements under HALLEX have not been met, the Court need not address whether the guidelines have been followed. Rather, the Court will determine whether remand is warranted as a result of Defendant's failure to comply with the HALLEX guidelines.

The procedural guidelines in the HALLEX manual are not binding on the courts. *Bowie*, 539 F.3d at 399 (noting that "the procedural guidance to the staff and adjudicators of the Office of Hearing and Appeals set forth in the HALLEX" are "not binding on this court"); *Lawrence v. Colvin*, No. 3:13-032-DCR, 2014 WL 640990, at *4 (E.D. Ky. Feb. 18, 2014) ("the HALLEX procedures are not binding on this Court"); *Alilovic v. Astrue*, No. 1:12CV323, 2012 WL 5611077, at *7 (N.D. Ohio Nov. 15, 2012) ("HALLEX is an 'internal guidance tool' for use by ALJs and other staff members, is not published in either the Federal Register or the Code of Regulations, and does not have the force of law."). Furthermore, the HALLEX guidelines do not create procedural due process rights. *Lawrence*, 2014 WL 640990 at *4 (citing *Dukes v. Comm'r of Soc. Sec.*, No. 1:10-cv-436, 2011 WL 4374557, at *9 (S.D. Mich. Sept. 19, 2011)).

"Nonetheless, some courts have granted relief where the procedures were not followed *and where the plaintiff demonstrates prejudice* from the failure to follow procedures." *Id.*

16

(emphasis added) (citing *Estep v. Astrue*, No. 2:11-cv-00017, 2013 WL 212643, at *12 (M.D. Tenn. Jan. 18, 2013) (Report and Recommendation adopted by *Estep v. Colvin*, No. 2:11-cv-00017, 2013 WL 2255852 (M.D. Tenn. May 22, 2013)); *see also Kendall v. Astrue*, No. 09-239-GWU, 2010 WL 1994912 (E.D. Ky. May 19, 2010) ("This court concluded that a failure to follow the exact procedures in HALLEX did not require reversal absent a convincing showing of prejudice to the plaintiff.").  There is no prejudice where the ALJ who presides at the hearing writes the decision and a second ALJ merely signs the decision for the presiding ALJ.  *Estep*, 2013 WL 212643 at *12 (citing *Pehrson v. Soc. Sec. Admin. Comm'r*, 2011 WL 2650187, at *2-13 (D. Maine July 6, 2011); *Kendall*, 2010 WL 1994912 at *4).  Where the second ALJ writes and signs the decision, courts have found prejudice when the decision relies on observations of the plaintiff's demeanor at the hearing in making a credibility determination.  *See Cohan v. Comm'r of Soc. Sec.*, 2011 WL 3319608, at *4-6 (M.D. Fla. July 29, 2011).  However, courts have found no prejudice exists where an ALJ's credibility determination is "based on evidence from the existing record and the transcript from the hearing," rather than on the plaintiff's demeanor at the hearing, "and a second hearing would not have added in any meaningful way to the record."  *George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009); *see also Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001).

Here, Plaintiff has not made any allegations of prejudice resulting from the ALJ's failure to follow HALLEX guidelines regarding the signature of an ALJ other than the ALJ who conducted the hearing.  Where a plaintiff fails to make allegations of prejudice, he is not entitled to relief unless the prejudice is apparent from the record.  *See Estep*, 2013 WL 212643 at *12. The Court must therefore determine whether, based upon the administrative record, Plaintiff was prejudiced by the deviation from the HALLEX guidelines.  ALJ Snyder signed the decision

17

"Edward A. Snyder for Eduardo Soto" (Tr. 22). There is nothing in the record to indicate that Plaintiff's case was reassigned to ALJ Snyder or that ALJ Snyder authored the opinion. In this situation, the Court can only infer that ALJ Snyder signed the decision on behalf of ALJ Soto, who approved it. *See Lawrence*, 2014 WL 640990 at *4. "Although the lack of explanation for the signature is less than ideal, it is not reversible error warranting remand." *Id.* (citing *Estep*, 2013 WL 212643). Accordingly, I **FIND** that Plaintiff was not prejudiced by ALJ Snyder's signature on behalf of ALJ Soto.

After a careful review of the record, I **FIND** that ALJ Snyder signed the decision on behalf of ALJ Soto, with his approval, and therefore **FIND** no prejudice to Plaintiff. Accordingly, I **CONCLUDE** that any error resulting from the ALJ's failure to follow the HALLEX guidelines was harmless, and thus remand is not warranted.

### D. Evaluation of Plaintiff's GAF Scores

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's GAF scores, because Plaintiff alleges that the ALJ improperly minimized the severity of Plaintiff's mental impairments and symptoms based on her GAF scores. Plaintiff argues that the ALJ should not have assigned minimal weight to Plaintiff's GAF scores on the basis that Plaintiff had not required inpatient mental health treatment. Plaintiff argues that her GAF score of 49 is consistent with serious impairment. Defendant argues that the ALJ's treatment of Plaintiff's GAF scores was proper, because the ALJ based the weight he gave to the GAF scores on the fact that they were not consistent with Plaintiff's treatment history or the observations and opinions of Wendy Bovell and Dr. Sachs, not merely on the basis that Plaintiff had not received inpatient mental health treatment.

A GAF is a clinician's subjective rating, on a scale of 0-100, of a person's overall psychological functioning. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). A GAF score of 41-50 corresponds to "serious symptoms (e.g., suicidal ideation, severe obsessional rituals . . .) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 503 (quoting DSM-IV-TR at 34) (internal quotation marks omitted). A GAF score of 51-60 corresponds to a moderate impairment "(e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

In *Kennedy v. Astrue*, the Sixth Circuit addressed GAF scores. 247 F. App'x 761, 766 (6th Cir. 2007). While the Commissioner has "declined to endorse the GAF score for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings," "[a] GAF score may help an ALJ assess mental RFC." *Id.* (citations and internal quotation marks omitted). The Sixth Circuit's focus on GAF scores in *Kennedy* is not to hold that an ALJ may not consider GAF scores in determining mental limitations, but rather to hold that GAF scores "are not raw medical data," and changes in GAF scores "do not necessarily indicate improved symptoms or mental functioning." *Id.* Therefore, while an ALJ should not conclude that a claimant's mental functioning has *improved* based solely on GAF scores, the ALJ may properly consider a physician's assessment of a claimant's GAF score in determining the claimant's mental limitations.

Here, the ALJ considered Plaintiff's GAF scores in his analysis of Plaintiff's RFC (Tr. 22). The ALJ specifically mentioned Plaintiff's reported GAF scores in the ALJ's discussion of

19

Plaintiff's RFC, noting the score of 49 from Plaintiff's visit to the Johnson Mental Health Center

on February 4, 2010 and the score of 61 from Plaintiff's visit to Wendy Bovell on March 23,

2010 (Tr. 18). In making the RFC determination, the ALJ considered these GAF scores in

addition to other mental health evidence from the record, stating:

> Regarding her mental functioning, the evidence shows a few low GAF scores of 49 (Exhibits 1F, 10F, and 11F), however these scores are given minimal weight as the claimant has not required inpatient hospitalization for her mental health symptoms. She also has limited outpatient treatment, with medications provided by her primary care physician. Furthermore, Mrs. Bovell noted that the claimant had a GAF of 61, and that her memory was adequate, but her concentration and social ability were moderately impaired. She also opined that the claimant somewhat exaggerated her symptoms, indicating more severity than actually suffered. Mrs. Bovell noted that the claimant was never taught about work ethics, and that 95% of her family members were receiving disability. This upbringing raised concerns regarding her motivation to earn income through employment (Exhibit 3F). Great weight is assigned to Dr. Sachs' opinion that the claimant could perform one, two, and three step tasks over a full workweek in coordination with others. She maintained the ability to interact infrequently or one on one with the general public and meet basic social demands in a work setting. Lastly, she had the ability to adapt to gradual or infrequent changes (Exhibit 5F). This opinion is consistent with performance of unskilled work.

(Tr. 20).

The ALJ did not use Plaintiff's GAF score to find that Plaintiff's mental functioning had

improved, but merely considered the GAF score as information related to Plaintiff's mental

capabilities. The ALJ also specifically considered Wendy Bovell's evaluation of Plaintiff,

including Ms. Bovell's doubts as to Plaintiff's work ethic, motivation, and severity of Plaintiff's

symptoms. The ALJ considered both Plaintiff's inpatient and outpatient treatment, which were

minimal, noting that Plaintiff "merely received medications from her primary care physicians"

(Tr. 19, 20). While the ALJ gave little weight to Plaintiff's GAF scores, the ALJ's decision to

give greater weight to other evidence in the record is supported by substantial evidence, given Plaintiff's social worker's doubts as to Plaintiff's work ethic and the severity of her complaints, in addition to the fact that Plaintiff's mental health was managed with medication from her primary care physician. Accordingly, I **FIND** that the ALJ's evaluation of Plaintiff's GAF scores in his determination of Plaintiff's mental limitations was proper. I further **FIND** that the ALJ's determination of Plaintiff's mental limitations as part of the RFC was proper and supported by substantial evidence in the record.

### E. Lack of Function-by-Function Assessment

Plaintiff argues that the ALJ erred by failing to include a function-by-function assessment in the RFC determination as required by SSR 96-8p, 1996 WL 374184 (July 2, 1996). Plaintiff quotes from SSR 96-8p, stating that the "RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," and that "[e]ach function must be considered separately" for exertional capacity. *Id.* at *3, 5. Plaintiff contends that while the ALJ provided a lengthy RFC discussion, the ALJ erred by failing to include a function-by-function assessment of each of the exertional factors. While Plaintiff quotes SSR 96-8p, Plaintiff does not support her arguments with any citation to case law or other regulatory authority. Defendant contends that while the ALJ did not provide a function-by-function analysis in the decision, the ALJ is not required to include a function-by-function discussion in his RFC analysis.

"While SSR 96-8p requires a function-by-function evaluation to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (internal citations and quotation marks omitted). Further, "[a]lthough a function-by-function analysis is

desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing," as there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Id.* (internal citations and quotation marks omitted). SSR 96-8p clearly states that the ALJ must consider each function separately; it does not state that the ALJ must discuss each function separately in the narrative of the ALJ's decision. Here, the ALJ specifically discussed, with detail, Plaintiff's complaints regarding her limitations (Tr. 17) as well as each of the treating and consultative physicians' opinions regarding Plaintiff's limitations (Tr. 18-21). The ALJ also stated that he had considered the entire record carefully (Tr. 16) before determining Plaintiff's RFC.

I therefore **FIND** that the ALJ properly considered each function separately as required by SSR 96-8p. I also **FIND** that the ALJ's narrative discussion sufficiently explained Plaintiff's ability to perform work activities and her limitations in performing work activities. As the ALJ properly considered Plaintiff's impairments, I **FIND** the ALJ's RFC determination to be proper and supported by substantial evidence. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013).

### F. Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ erred by failing to properly assess and evaluate Plaintiff's credibility as required by SSR 96-7p, 1996 WL 374186 (July 2, 1996). Plaintiff quotes a large portion of this ruling and argues that while the ALJ stated he used the criteria from SSR 96-7P in reaching his decision, merely "recit[ing] the factors that are described in the regulations for evaluating symptoms" is "not enough." *Id.* at *2. Plaintiff argues that the ALJ erred in making a credibility determination by finding that Plaintiff's allegations of pain, stiffness, fatigue, insomnia, difficulty concentrating and remembering, social withdrawal, and panic attacks were

inconsistent with the record. Plaintiff argues that the ALJ wrongly focused on the fact that Plaintiff did not seek specialized treatment or surgical intervention, and Plaintiff states that the record shows she had been prescribed medication for pain. Defendant argues that the ALJ's credibility determination was proper because the ALJ is not required to accept a claimant's subjective complaints where there are contradictions between the claimant's testimony and evidence in the record. Defendant argues that the ALJ thoroughly discussed the evidence, including the lack of objective medical evidence, Plaintiff's conservative treatment, Plaintiff's improvement with physical therapy, and Ms. Bovell's opinion, which all support the ALJ's credibility determination and show that the ALJ did not make only a conclusory statement regarding Plaintiff's credibility.

As noted previously, assessing a claimant's credibility is a task entrusted to the ALJ, not the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers*, 486 F.3d at 247; *Jones*, 336 F.3d at 476. An ALJ is entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony." *White*, 572 F.3d at 287. Further, an ALJ's credibility assessment is entitled to great weight, and is even considered to be "virtually unchallengeable," *Ritchie*, 540 F. App'x at 511 (citations and internal quotation marks omitted), where the assessment is fully explained and is not at odds with uncontradicted evidence in the record, *King*, 742 F.2d at 974-75.

Here, the ALJ explained his assessment of Plaintiff's credibility, stating:

> Although the claimant's impairments could reasonably cause her symptoms, including pain, stiffness, fatigue, insomnia, difficulty concentrating and remembering, social withdrawal, and panic attacks, her testimony regarding the severity, intensity, and disabling effect of these impairments is only partially credible. The[] medical evidence shows that the claimant's joint pain and limited range of motion improved with physical therapy. There is no evidence of diagnostic imaging to support her allegations of

back pain. Furthermore, she did not require injections or surgical intervention for her musculoskeletal complaints. Regarding her mental health symptoms, the claimant merely received medications from her primary care physicians, and did not require inpatient hospitalization or intensive outpatient treatment. Lastly, Mrs. Bovell noted that the claimant's memory was adequate, but her concentration and social ability were moderately impaired. She also opined that the claimant somewhat exaggerated her symptoms, indicating more severity than actually suffered (Exhibit 3F). For the aforementioned reasons, the claimant's testimony is only partially credible.

(Tr. 19-20). In discounting Plaintiff's credibility, the ALJ specifically considered Plaintiff's improvement over time with therapy, the lack of medical evidence in the record to support her allegations of back pain, Plaintiff's conservative treatment history for her physical and mental health complaints, as well as her social worker's opinion that Plaintiff was exaggerating her symptoms. Accordingly, I **FIND** the ALJ's decision to discount Plaintiff's credibility was supported by substantial evidence in the record.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[2] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**.[3]

---

[2] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

[3] Plaintiff's first motion for judgment on the pleadings [Doc. 10] should be terminated by the Clerk, as it was filed improperly in error.

2)  The Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**.

3)  The Commissioner's decision denying benefits be **AFFIRMED**.


        s/ *Susan K. Lee*

        SUSAN K. LEE
        UNITED STATES MAGISTRATE JUDGE